**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DEETZ FAMILY, LLC,

          Plaintiff,

vs.

RUST-OLEUM CORPORATIOIN,

          Defendant.

Civil Action No. 16-10790

**JURY TRIAL DEMANDED**

**COMPLAINT FOR BREACH OF CONTRACT,**
**PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT**

Plaintiff, Deetz Family, LLC ("Deetz"), by counsel, files this complaint against

Defendant, Rust-Oleum Corporation ("Rust-Oleum"), and hereby alleges as follows:

**Nature of The Action**

1.    This is a civil action for breach of contract due to Rust-Oleum's failure to pay

royalties to Deetz as stipulated in a License Agreement, as well as for infringement of U.S.

Patent No. 5,609,788 ("the '788 patent"), U.S. Patent No. 5,843,329 ("the '329 patent")

(collectively, "the asserted patents"), and U.S. Trademark Registration No. 3,970,111 for the

mark TINTABLE.

**Parties**

2.    Plaintiff, Deetz Family, LLC, is a limited liability corporation incorporated

under the laws of the Commonwealth of Massachusetts and maintains its principal place of

business at 1 Emerson Street, Mendon, Massachusetts 01756, and have operated through

predecessors discussed below (hereinafter, "Deetz").

3.      Defendant, Rust-Oleum Corporation, is incorporated under the laws of the State of Illinois and maintains its principal place of business at 11 Hawthorn Parkway, Vernon Hills, Illinois 66061.

### Jurisdiction and Venue

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1338(a) because this action also arises under the Patent Laws of the United States, 35 U.S.C. §§271 *et seq.*

6.      This Court has subject matter jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367 because this action also arises under the trademark laws of the United States, 15 U.S.C. §§1051 *et seq*., as amended (hereinafter the "Lanham Act"), §1114(1) and §1125(a), and the common law of the Commonwealth of Massachusetts.

7.      Rust-Oleum is subject to the personal jurisdiction of this Court because Rust-Oleum explicitly consented that any dispute arising out of the License Agreement, the patents or Know-How will be litigated in Massachusetts.

8.      Rust-Oleum is subject to the personal jurisdiction of this Court further because Rust-Oleum entered into the License Agreement with a Massachusetts limited liability company Fibron LLC (which later assigned the entire patent rights to Deetz Family, LLC, another Massachusetts limited liability company) and Rust-Oleum's acts or omissions performed under the License Agreement have caused Deetz's injuries alleged herein.

Moreover, on information and belief, Rust-Oleum actively promotes and sells its infringing products in this District and maintains a website visited by potential customers in this District.

9.      Venue is proper under 28 U.S.C. §1391(b) because Rust-Oleum is subject to personal jurisdiction in this District.  Moreover, the License Agreement that is the subject of the breach of contract claim specifies that disputes arising under the contract shall be litigated in the Commonwealth of Massachusetts, which encompasses this District.

**Background**

BREACH OF CONTRACT AND PATENT INFRINGEMENT

10.     On March 11, 1997, the '788 patent, entitled "Magnetic Paint Additive," was duly and legally issued by the U.S. Patent and Trademark Office ("PTO").  The sole inventor, Dayton J. Deetz, was the lawful owner of the '788 patent.  A copy of the '788 patent is attached hereto as Exhibit 1 and incorporated by reference.

11.     On December 1, 1998, the '329 patent, entitled "Magnetic Paint or Ink Additive," was duly and legally issued by the U.S. PTO.  The sole inventor, Dayton J. Deetz, was the lawful owner of the '329 patent.  A copy of the '329 patent is attached hereto as Exhibit 2 and incorporated by reference.

12.     The '329 patent is a continuation-in-part of the '788 patent.  Both patents expired on March 17, 2015.

13.     On January 29, 2001, Fibron LLC ("Fibron") of 73 Washington Street, Mendon, MA 01756, became the lawful owner of the '329 patent and the '788 patent by assignment of right, title and interest to both patents, including the right to sue and recover for infringement thereof, from Dayton J. Deetz.  The patent assignment was recorded with the U.S. PTO on May 9, 2001.

14.     On April 20, 2005, Fibron (Licensor) and Rust-Oleum (Licensee) entered into the License Agreement, which is the subject of the breach of contract claim.  A copy of the License Agreement is attached hereto as Exhibit 3 and incorporated by reference.

15.     Subject to early termination, the term of the License Agreement is from the execution date of April 20, 2005 to March 17, 2020 (five years after the expiration of the last of the asserted patents, March 17, 2015).  (Provision 4.A of the License Agreement, Exhibit 3).

16.     Per the License Agreement, Licensor grants to Licensee "the non-exclusive right to the Licensed Inventions and Know-How in order to manufacture, have made, use and sell the Licensed Products in the Territory [i.e., the world]."  (Provision 4.A of the License Agreement, Exhibit 3).

17.     The "Licensed Inventions" in the License Agreement refers to the '329 and '788 patents.  The Licensed Products in the License Agreement refer to "paint primer and paint top coat, excluding magnetic receptive chalkboard paint and any coatings for the purpose of coating printable substrates or sign boards, according to the Patents, Licensed Inventions and/or Know How." (Provision 1 of the License Agreement, Exhibit 3).

18.     As a consideration, Licensee agrees to pay Licensor an initial payment of one hundred thousand dollars ($100,000.00) on the execution date of the License Agreement, and an Actual Royalty on Licensee's sales of the Licensed Products at a rate of 3% of Net Sales from the execution date to the patent expiration date (i.e., up to March 17, 2015), and at a rate of 2% of Net Sales after the patent expiration date for a period of five years (i.e., from March 18, 2015 to March 17, 2020).  (Provision 5.A to 5.C of the License Agreement, Exhibit 3).

19.     The License Agreement also sets the following minimal Royalties that Licensee must pay each year:

| Year | Minimum Royalty |
|---|---|
| Year 1 (2006) | $20,000.00 US |
| Year 2 (2007) | $30,000.00 US |
| Year 3 (2008) and each year thereafter through the expiration of the Patents | $40,000.00 US |

(Provision 5.D of the License Agreement, Exhibit 3).

20.      The License Agreement states that the rights of Licensor under this Agreement shall be assignable by Licensor and shall vest Licensors' assignees or transferees with the same rights and obligations as were held by Licensor. (Provision 15 of the License Agreement, Exhibit 3).

21.     On February 15, 2006, Fibron assigned and transferred all of the rights and obligations that were held by Fibron under the License Agreement to Deetz.  Moreover, Deetz became the lawful owner of the '329 and '788 patents by assignment of right, title and interest to both patents, including the right to sue and recover for infringement thereof, from Rust-Oleum.  The patent assignment was recorded with the U.S. PTO on February 12, 2014.

22.     Therefore, since February 15, 2006, Deetz has been vested with the same rights, including the right to collect royalties pertaining to the '329 and '788 patents and related know-how, and the right to sue and recover for infringement thereof, as were previously held by Fibron with respect to the License Agreement and the asserted patents.

23.     Pursuant to Provision 4.A of the License Agreement, Deetz/Fibron granted Rust-Oleum "the non-exclusive right to the Licensed Inventions and Know-How in order to manufacture, have made, use and sell the Licensed Products in the Territory [i.e., the world]" from April 20, 2005 until the termination of the License Agreement.

5

24.     On information and belief, Rust-Oleum has been selling magnetic primer products and other Licensed Products from April 20, 2005 to present.

25.     Based on investigation, Rust-Oleum's magnetic primer products are covered by at least one claim of the '329 patent and at least one claim of the '788 patent.

26.     Rust-Oleum paid the initial payment to Fibron at the execution of the License Agreement and at least part of Actual Royalties from 2006 to 2009 to Fibron/Deetz, per the License Agreement.

27.     In 2006, 2007, 2008, 2009 and 2010, the royalties paid by Rust-Oleum to Fibron/Deetz is less than the minimal Royalties of $20,000/year (2006), $30,000/year (2007) and $40,000/year (2008 to expiration date).

28.     Rust-Oleum did not pay any Actual Royalties or minimal Royalties to Fibron/Deetz from 2011 to present, as required by Provision 5.C of the License Agreement.

29.     Deetz/Fibron has no knowledge of the actual Net Sales of the Licensed Products by Rust-Oleum since at least as early as 2010.

30.     Rust-Oleum never sent a written notice to Fibron or Deetz stating that Rust-Oleum intended to terminate the License Agreement per Provision 12.C of the License Agreement.

31.     On August 13, 2013, Deetz/Fibron, via its counsel, demanded Rust-Oleum cure the breach by providing written royalty reports and submitting royalty payments for the period from 2011 to 2013.  A copy of the August 13, 2013 letter is enclosed as Exhibit 4.

32.     Rust-Oleum did not respond to Deetz/Fibron's demands of August 13, 2013.

33.     Deetz/Fibron's counsel sent a reminder to Rust-Oleum on September 9, 2013, demanding Rust-Oleum to cure the breach as set forth in the letter of August 13, 2013.  A copy of the September 9, 2013 reminder is enclosed as Exhibit 5.

34.     On September 20, 2013, counsel for Deetz/Fibron left a voice message to Neal Barry from Rust-Oleum, requesting Rust-Oleum to respond to the August 13, 2013 and the September 9, 2013 letters.

35.     Rust-Oleum did not respond to any of the letters or the voice message.

36.     Pursuant to Provisions 12.A of the License Agreement, Deetz/Fibron's counsel wrote a letter to Rust-Oleum on September 27, 2013, informing Rust-Oleum that the License Agreement shall be terminated on October 27, 2013 due to Rust-Oleum's breach of the License Agreement.  A copy of the September 27, 2013 letter is enclosed as Exhibit 6.

37.     On February 18, 2014, Deetz/Fibron's counsel, sent a letter to Rust-Oleum confirming the termination of the License Agreement on October 27, 2013 and proposing an amicable solution to the overdue royalties.  A copy of the February 18, 2014 letter is enclosed as Exhibit 7.

38.     Again, Rust-Oleum did not respond to the February 18, 2014 letter.

39.     Because the License Agreement was never terminated by any party until October 27, 2013, the License Agreement was valid and enforceable from April 20, 2005 to October 27, 2013.

40.     Per Provision 5.B and 5.D of the License Agreement and regardless of any termination, Rust-Oleum was obligated to pay Actual Royalty or minimal annual royalty,

whichever is higher, from April 20, 2005 to the expiration date of the patents (i.e., March 17, 2015), to Deetz.

41.     Per Provision 5.C of the License Agreement, Rust-Oleum is obligated to pay 2% of Net Sales during the period of March 18, 2015 to March 17, 2020.

42.     Per Provision 12.A of the License Agreement, Deetz may act to enforce Rust-Oleum's obligations after any termination.

43.      Thus, regardless of any termination, Rust-Oleum is obligated to pay, at a minimum, $42,008 plus interest to meet minimum royalties for 2006-2010, and an additional $168,329 plus interest in royalties to Deetz, for the period from January 1, 2011 to March 17, 2015, which is prorated in the year of the patent expiration.

44.     Additionally, regardless of any termination, Rust-Oleum is obligated to pay 2% of Net Sales during the period of March 18, 2015 to March 17, 2020, per Provision 5.C of the License Agreement.

45.     The asserted patents were valid and enforceable from their issuance dates to March 17, 2015.

46.     Rust-Oleum had actual notice of the asserted patents owned by Deetz/Fibron prior to its infringement activities because it executed the License Agreement concerning the asserted patents.

47.     Rust-Oleum received actual notices from Deetz that the License Agreement was terminated on October 27, 2013. (See Deetz/Fibron's letters of September 27, 2013 and February 18, 2014).

48.     Rust-Oleum was aware that it no longer had "the non-exclusive right to the Licensed Inventions and Know-How in order to manufacture, have made, use and sell the Licensed Products in the Territory [i.e., the world]" after October 27, 2013.

49.     Upon information and belief, Rust-Oleum continued making, using, selling, offering for sale, importing, supplying, and/or causing the supply of its magnetic primer products ("the infringing activities"), covered by one or more claims of the '788 and '329 patents pursuant to 35 U.S.C. § 271 *et. seq.*, without the authorization of Deetz, from October 27, 2013 (the termination of the License Agreement) to March 17, 2015 (the expiration date of the '788 and the '329 patents).

50.     Upon information and belief, Rust-Oleum was aware that the magnetic primer products were covered by one or more claims of the '788 and '329 patents.

51.     Upon information and belief, Rust-Oleum's magnetic primer products met each and every limitation of at least one claim of each of the '788 and '329 patents.

52.     Two screen shots of an online video provided by Rust-Oleum are provided at Exhibit 8.  This video shows at least one infringing product and further instructs customers how to infringe at least one claim of the '788 and '329 patents.  The video is available at https://www.youtube.com/watch?v=0vtLBNXNeQo.

53.     Thus, Rust-Oleum has infringed, contributed to infringement, and/or induced infringement of one or more claims of the asserted patents.

54.     Rust-Oleum has also willfully infringed, contributed to infringement, and/or induced infringement of one or more claims of the asserted patents.

55.     Deetz has been damaged by the loss of sales and customers by Rust-Oleum's infringing activities.

## TRADEMARK INFRINGEMENT

56.      Deetz has been in continuous operation in the field of magnetic receptive material painting products since as early as 1992.

57.      Since at least as early as May 1, 2004, Deetz has used the TINTABLE mark commercially in connection with painting products, including coatings in the nature of paints and writing surface paints; house paint; interior paint; mixed paints; paint for use in the manufacture of wallcoverings; paints; paints for arts and crafts; paints for tinting, for use on chalkboard and writing surfaces.  The TINTABLE mark is an important part of its brand identity for many years.

58.      Upon information and belief, TINTABLE is not a recognizable English word and carries no meaning.  TINTABLE is a coined term which was artificially first created by Deetz.

61.      On May 31, 2011, the TINTABLE mark was duly registered with U.S. PTO with Trademark Registration No. 3,970,111.  A copy of the trademark registration is attached hereto as Exhibit 9 and incorporated by reference.  As a result of the continuous use of the TINTABLE mark in commerce, the TINTABLE mark has acquired distinctiveness and secondary meaning and will soon become incontestable.

62.      Dayton J. Deetz was the sole lawful owner of the TINTABLE mark listed on the trademark registration certificate.  Deetz is the lawful owner of the TINTABLE mark by assignment of right, title and interest and goodwill to the trademark, including the right to sue and recover for infringement thereof, including past damages, from Dayton J. Deetz.  A copy of the trademark assignment from Dayton J. Deetz to Deetz are attached hereto as Exhibit 10 and incorporated by reference.

63.     In 2004-2005, in contemplation of a licensing agreement with Rust-Oleum, Deetz showed Rust-Oleum of Deetz's chalkboard paint product sold and marketed under TINTABLE® brand.  Rust-Oleum did not license the Deetz's TINTABLE chalkboard paint product from Deetz.

64.     Deetz recently learned that Rust-Oleum sells multiple tint base paints which infringe Deetz's trademark rights for TINTABLE.  Attached at Exhibit 11 and incorporated by reference is a printout from Rust-Oleum's website in which Rust-Oleum offers to sell its Advanced Technology UMA® Brand Tintable Base product.  Attached at Exhibit 12 and incorporated by reference is another printout from Rust-Oleum's website in which Rust-Oleum offers to sell its Chalk Board Tint Base product.  The product label reads, "TINTABLE TO 12 COLORS!"

65.     Upon information and belief, Rust-Oleum began using TINTABLE in connection with its products after Deetz's first use of the TINTABLE mark in commerce in May 1, 2004.

66.     The term TINTABLE used by Rust-Oleum on it products is identical to Deetz's registered trademark TINTABLE.

67.     Upon information and belief, Rust-Oleum and Deetz are direct competitors in the magnetic receptive painting material field.

68.     Upon information and belief, Rust-Oleum's products and Deetz's products are supplied through almost identical commercial channels and targeted at the same or substantially overlapped consumer groups because both services are related to the magnetic receptive paint materials.

69.     Upon information and belief, Rust-Oleum's products and Deetz's products are supplied in the same or similar geographic areas, including in the Commonwealth of Massachusetts.

70.     Rust-Oleum's use of the TINTABLE mark is likely to cause confusion, mistake or deception among the public who will be confused, mistaken and deceived into believing that Rust-Oleum's products labeled with the term TINTABLE are sponsored by, affiliated with, and/or authorized by Deetz.

71.     Upon information and belief, Rust-Oleum's use of the TINTABLE mark has misappropriated and continues to misappropriate the goodwill that Deetz has built in its usage of the TINTABLE mark.

72.     Upon information and belief, Rust-Oleum's activities have caused and continue to cause irreparable injury to Deetz's reputation and goodwill.

73.     Upon information and belief, Rust-Oleum has profited and continues to profit from its unlawful acts.

74.      Upon information and belief, Rust-Oleum will continue to commit the acts complained of herein unless enjoined.

75.     Rust-Oleum's use of the TINTABLE term, if not enjoined by this Court, has misled and will continue misleading the public and causing irreparable damage and harm of Deetz and the public.

76.     Upon information and belief, at the time of Rust-Oleum's adoption and first use of the term TINTABLE, Rust-Oleum knew or should have known of Deetz's existing rights in the TINTABLE trademark because of its communications with Deetz in 2004-2005 in contemplation of a licensing agreement from Deetz of Deetz's known how and patents related to magnetic receptive materials and the TINTABLE chalkboard paint product.

77.     Upon information and belief, during the period of Rust-Oleum's use of the term TINTABLE, Rust-Oleum knew or should have known of Deetz's existing rights in the TINTABLE

trademark because of the constructive knowledge provided by Deetz's trademark registrations with the United States Patent and Trademark Office.

78.     The intentional nature of Rust-Oleum unlawful acts renders this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT I
## (BREACH OF CONTRACT)

79.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporates them herein by reference.

80.     Deetz/Fibron and Rust-Oleum entered into a valid and enforceable License Agreement that Deetz/Fibron shall grant Rust-Oleum the non-exclusive right to the Licensed Inventions (i.e., the '788 and the '329 patents) and Know-How in order to manufacture, have made, use and sell the Licensed Products in the world, and that as a consideration, Rust-Oleum shall pay an initial payment and annual royalties to Deetz/Fibron, and that the term of the License Agreement is from April 20, 2005 to five years after the expiration of the last of the '788 and the '329 patents, subject to early termination by any party in writing

81.     Deetz performed its obligations under the License Agreement by granting to Rust-Oleum the non-exclusive right to the Licensed Inventions and Know-How in order to manufacture, have made, use and sell the Licensed Products in the world during the term of the License Agreement, as set forth above.

82.     Rust-Oleum partially performed its obligations by paying the initial payment and royalties to Deetz from 2006 to 2009, but did not perform its obligations under the License Agreement since 2010 because Rust-Oleum failed to render royalties to Deetz for that period.

83.     As a result of Rust-Oleum's actions, Deetz has been injured, at minimum, in the amount of $210,337 or 3% of Net Sales minus the royalties already paid, from January 1, 2006 to March 17, 2015 (with 2006 no less than $20,000, 2007 no less than $30,000 and each year thereafter no less than $40,000 except prorated for year 2015), whichever is higher, plus interest.

84.     Deetz has been injured for Rust-Oleum's use of Plaintiff's Know How without paying 2% of Net Sales to Deetz from March 18, 2015 to March 17, 2020.

85.     Rust-Oleum's actions constitute a breach of contract for which Rust-Oleum is liable to Deetz, at minimum, in the amount of $210,337, or 3% of Net Sales minus the royalties already paid, from January 1, 2006 to March 17, 2015 (with 2006 no less than $20,000, 2007 no less than $30,000 and each year thereafter no less than $40,000 except prorated for year 2015), whichever is higher,  and 2% of Net Sales of Rust-Oleum's magnetic primer product from March 18, 2015 to March 17, 2020, plus interest.

## COUNT II
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

86.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporates them herein by reference.

87.     The License Agreement between Deetz and Rust-Oleum contained an implied covenant of good faith and fair dealing.

88.     Rust-Oleum's actions described above violated Deetz's reasonable expectations of performance by Rust-Oleum.

89.     As a result of Rust-Oleum's actions, Deetz has been injured, at minimum, in the amount of $168,329 or 3% of Net Sales from January 1, 2011 to March 17, 2015 (with each year no less than $40,000 except year 2015), whichever is higher, plus interest.

90.     Rust-Oleum is obligated to pay Deetz 2% of Net Sales during the period of March 18, 2015 to March 17, 2020 due to Rust-Oleum's continued use of Plaintiff's Know How.

91.     Rust-Oleum's actions constitute a breach of contract for which Rust-Oleum is liable to Deetz, at minimum, in the amount of $210,337 or 3% of Net Sales minus the royalties already paid, from January 1, 2006 to March 17, 2015 (with 2006 no less than $20,000, 2007 no less than $30,000 and each year thereafter no less than $40,000 except prorated for year 2015), whichever is higher, and additional 2% of Net Sales of Rust-Oleum's magnetic primer product from March 18, 2015 to March 17, 2020, plus interest.

92.     Rust-Oleum's actions constitute a breach of the implied covenant of good faith and fair dealing for which Rust-Oleum is liable to Deetz , at minimum, in the amount of $210,337, or 3% of Net Sales minus the royalties already paid, from January 1, 2006 to March 17, 2015 (with 2006 no less than $20,000, 2007 no less than $30,000 and each year thereafter no less than $40,000 except prorated for year 2015), whichever is higher,  and 2% of Net Sales of Rust-Oleum's magnetic primer product from March 18, 2015 to March 17, 2020, plus interest.

## COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 5,609,788)

93.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporates them herein by reference.

94.     Deetz is the owner of the entire right, title and interest in and to the '788 patent.

95.     Upon information and belief, Rust-Oleum has directly infringed, contributed to infringement, and/or induced infringement of one or more claims of the '788 patents pursuant to 35 U.S.C. § 271 *et. seq.* by making, using, selling, offering for sale, importing, supplying, and/or causing the supply of the magnetic primer products, which infringes one or more claims

of the '788 patent, without the authorization of Deetz, from October 27, 2013 to March 17, 2015.

96.     Rust-Oleum had actual notice of the asserted patents prior to its infringement activities and was aware that Deetz no longer granted to Rust-Oleum the non-exclusive right to the '788 patent after October 27, 2013.

97.     Upon information and belief, Rust-Oleum has willfully infringed the asserted patents by the infringing activities.

98.     Deetz has been damaged by the loss of sales and customers by Rust-Oleum's infringement of the '788 patent, and claims all damages, including but not limited to lost profits and reasonable royalties, to which it is entitled.

## COUNT IV
### (INFRINGEMENT OF U.S. PATENT NO. 5,843,329)

99.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporates them herein by reference.

100.     Deetz is the owner of the entire right, title and interest in and to the '329 patent.

101.     Upon information and belief, Rust-Oleum has directly infringed, contributed to infringement, and/or induced infringement of one or more claims of the '788 patents pursuant to 35 U.S.C. § 271 *et. seq.* by making, using, selling, offering for sale, importing, supplying, and/or causing the supply of the magnetic primer products, which infringes one or more claims of the '329 patent, without the authorization of Deetz, from October 27, 2013 to March 17, 2015.

102.     Rust-Oleum had actual notice of the asserted patents prior to its infringement activities and was aware that Deetz no longer granted to Rust-Oleum the non-exclusive right to the '329 patent after October 27, 2013.

103.    Upon information and belief, Rust-Oleum has willfully infringed the asserted patents by the infringing activities.

104.    Deetz has been damaged by the loss of sales and customers by Rust-Oleum's infringement of the '329 patent, and claims all damages, including but not limited to lost profits and reasonable royalties, to which it is entitled.

## COUNT V
### (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)

105.    Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporate them herein by reference.

106.    Rust-Oleum's use of TINTABLE on its products, which is identical to Plaintiff's U.S. Trademark Registration No. 3,970,111 for TINTABLE, constitutes trademark infringement and gives rise to a likelihood of confusion, deception, and mistake among the public.

107.    Upon information and belief, Rust-Oleum adopted and used the TINTABLE mark with the willful purpose and intent of misleading the public and trading upon the goodwill and reputation associated with Deetz's registered trademark.

108.    These acts violate the United States Lanham Act and constitute infringement of Deetz's registered trademark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, *et seq*.

109.    As a result of Rust-Oleum's infringing activities, the public is likely to be and has already been confused, misled or deceived as to the source, origin or sponsorship of Rust-Oleum's goods, and Deetz has suffered irreparable injury for which it has no adequate remedy at law.

## COUNT VI
## (FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a))

110.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporate them herein by reference.

111.     Rust-Oleum's use of the TINTABLE mark constitutes offering for sale and selling goods in interstate commerce using false and misleading descriptions and representations of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

112.     Upon information and belief, Rust-Oleum adopted and used the TINTABLE mark with the knowledge that it was misleading, and deceptive, and with the intent to compete unfairly with Deetz and to misappropriate the goodwill of Deetz.

113.     As a result of Rust-Oleum's activities, the public is likely to be confused, misled, or deceived about the sources of Rust-Oleum's goods, and Deetz is now and will continue to suffer irreparable injury to its goodwill and reputation, for which it has no adequate remedy at law.

## COUNT VII
## (COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION)

114.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of its Complaint and incorporates them herein by reference.

115.     Rust-Oleum's use of the TINTABLE marks on its goods is misleading, confusing to the public, and likely causing injury to Deetz's public image and reputation.

116.     As a result of Rust-Oleum's use of the TINTABLE marks on its goods, the public is likely to falsely associate the attributes, characteristics, and reputation of Deetz's goods with those of Rust-Oleum's.

117.     Upon information and belief, Rust-Oleum's acts are willful.

118.    As a result of Rust-Oleum's acts, Deetz has suffered irreparable harm, for which it has no adequate remedy at law.

119.    The foregoing acts constitute trademark infringement and unfair competition under the common law of the Commonwealth of Massachusetts.

### Request for Relief

WHEREFORE, Plaintiff Deetz respectfully requests that this Court enter a judgment for Plaintiff and award Plaintiff the following relief:

With regard to Counts I to IV,

a.    That Plaintiff be awarded its compensatory damages in the amount of at least, at minimum, in the amount of $210,337 or 3% of Net Sales minus the royalties already paid, from January 1, 2006 to March 17, 2015 (with 2006 no less than $20,000, 2007 no less than $30,000 and each year thereafter no less than $40,000 except prorated for year 2015) based on actual accounting, whichever is higher, together with prejudgment interest, based on the breach of contract claim.

b.    That Plaintiff be awarded damages sufficient to compensate it for Rust-Oleum's use of Plaintiff's Know How, including, at minimum, 2% of Net Sales from March 18, 2015 to March 17, 2020.

c.    That a judgment be entered that Defendant has directly infringed, actively induced others to infringe, and/or contributorily infringed the '788 patent and the '329 patent.

d.    That a judgment be entered that Defendant has willfully infringed, willfully induced others to infringe, and/or willfully contributed to infringement of the '788 patent and the '329 patent.

e.      That Plaintiff be awarded three times the amount of damages suffered by reason

of the willful infringements by Defendant, together with prejudgment interest,

based on the patent infringement claim.

With regard to Counts V to VII,

f.      That Defendant is preliminarilyy and permanently enjoined from using

TINTABLE in connection with any of its products or services.

g.      That a judgment be entered that Defendant has infringed the Deetz's mark in

violation of in violation of 15 U.S.C. § 1114 and has damaged Deetz's goodwill.

h.      That a judgment be entered that Defendant has unfairly competed with Deetz by

the acts complained of herein in violation of in violation of 15 U.S.C. § 1125(a).

i.      That a judgment be entered that the acts of Defendant constitute unfair

competition and trademark infringement in violation of the common law of the

Commonwealth of Massachusetts.

j.      That Defendant be ordered to account and pay to Deetz all profits derived as a

result of the activities complained of herein.

k.      That Defendant be ordered to pay to Deetz damages sustained as a result of the

activities complained of herein.

l.      That Defendant be ordered to pay increased damages due to its willful

infringement.

With regard to all counts,

m.      Plaintiff's reasonable attorneys' fees and costs incurred in this action.

n.      Such other and further relief as the Court may deem just and proper.

## Demand For a Jury Trial

In accordance with Federal Rules of Civil Procedure 38, Plaintiff hereby respectfully demands a trial by jury of all issues and claims to triable.

Dated:  April 28, 2016                                 Respectfully submitted,


/s/ Amanda M. Rettig
Timothy P. O'Neill (BBO #379715)
Amanda M. Rettig (BBO #653900)
Peter C. Obersheimer (BBO #680187)
MURPHY & KING, P.C.
One Beacon Street
Boston, MA 02108
Tel: 617-423-0400
toneill@murphyking.com
arettig@murphyking.com
pobersheimer@murphyking.com

Gene S. Winter *(pro hac vice pending)*
Jonathan A. Winter *(pro hac vice pending)*
Bojuan Deng *(pro hac vice pending)*
ST ONGE STEWARD JOHNSTON & REENS
986 Bedford Street
Stamford, CT 06905
Tel: 203-324-6155
Fax: 203-327-1096
ligitation@ssjr.com

Attorneys for Plaintiff,
Deetz Family LLC