**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

|                                  |     |                          |
| -------------------------------- | --- | ------------------------ |
|                                  | )   |                          |
| **DEETZ FAMILY, LLC,**           | )   |                          |
|                                  | )   | **CIVIL ACTION**         |
| **Plaintiff,**                   | )   |                          |
|                                  | )   | **NO. 4:16-CV-10790-TSH**|
| **v.**                           | )   |                          |
|                                  | )   |                          |
| **RUST-OLEUM CORPORATION,**      | )   |                          |
|                                  | )   |                          |
| **Defendant.**                   | )   |                          |
|                                  | )   |                          |

---

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
### (Docket No. 19)

**November 10, 2016**

**HILLMAN, D.J.**

Plaintiff Deetz Family, LLC filed this lawsuit after defendant Rust-Oleum Corporation ceased making payments under the parties' License Agreement for use of Deetz's patented inventions and know-how related to magnetic paint products.  Deetz asserts claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), infringement of U.S. Patent No. 5,609,788 (Count III), infringement of U.S. Patent No. 5,843,329 (Count IV), infringement of U.S. Trademark Registration No. 3,970,111 "TINTABLE" (Count V), false designation of origin in violation of 15 U.S.C. §1125(a) (Count VI), and common law trademark infringement and unfair competition (Count VII).  Rust-Oleum moves to dismiss Counts II, III and IV pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  For the reasons detailed below, Defendant's motion to dismiss (Docket No. 19) is ***granted in part and denied in part***.

1

## Background

Dayton J. Deetz, the sole inventor of U.S. Patent No. 5,609,788 ("Magnetic Paint Additive", issued March 11, 1997) and U.S. Patent No. 5,843,329 ("Magnetic Paint or Ink Additive", issued December 1, 1998), assigned his rights in both patents to Fibron, LLC on January 29, 2001.   On April 20, 2005, Rust-Oleum and Fibron entered into a License Agreement that granted Rust-Oleum non-exclusive rights to the patents and related know-how to manufacture, have made, and use and sell, magnetic paint products.   The terms of the License Agreement required Rust-Oleum to pay an up front fee of $100,000 USD and royalties equaling 3% of net sales from April 20, 2005 until March 17, 2015 (the expiration date of the licensed patents), and 2% of net sales from March 18, 2015 until March 17, 2020.   The Agreement also provided for payment of a minimum royalty of $20,000 in 2006, $30,000 in 2007, and $40,000 per year for the remaining years of the Agreement, in the event that actual royalties calculated from net sales fell below these thresholds.   Section 17 of the License Agreement states that the contract shall be interpreted under Illinois law.

On February 15, 2006, Fibron assigned and transferred all of its rights in the '788 and '329 patents, as well as its rights in the License Agreement, to the plaintiff, Deetz Family, LLC.   Rust-Oleum made the $100,000 up front payment and paid at least part of actual royalties from 2006 - 2009, but from 2006 - 2010 did not pay the minimum royalties required under the license.   Without notifying Deetz of any intent to terminate the License Agreement, Rust-Oleum ceased making payments in 2010, and did not respond to Deetz's demand letters regarding royalty reports and overdue payments in August and September of 2013.   On September 27, 2013, Deetz sent a letter

notifying Rust-Oleum that the License Agreement would be terminated on October 27, 2013, and followed up with a letter on February 18, 2014 confirming termination of the Agreement.

Deetz alleges that Rust-Oleum continued making the licensed products after it stopped paying royalties, in breach of the License Agreement (Count I) and in breach of the implied covenant of good faith and fair dealing (Count II).  In addition, Deetz claims that Rust-Oleum's products directly and indirectly infringed the '788 and '329 patents from October 27, 2013 (the termination of the License Agreement) until March 17, 2015 (the expiration date of the patents) (Counts III and IV).  Deetz contends that a YouTube video provided by Rust-Oleum shows an infringing product, and instructs customers on how to infringe "at least one claim of the '788 and '329 patents," but does not identify which claim(s).[1]

Deetz is seeking, *inter alia*, $42,008, plus interest, it alleges Rust-Oleum still owes to meet the minimum royalty payments due under the Agreement for the period spanning 2006-2010, and an additional $168,329, plus interest, for royalties due for the period January 1, 2011 - March 17, 2015.  Deetz is also seeking to enforce the terms of the Agreement requiring Rust-Oleum to pay 2% of net sales for the period March 18, 2015 – March 17, 2020.

## Discussion

*Count II – Breach of Implied Covenant of Good Faith and Fair Dealing*

Deetz alleges that Rust-Oleum's failure to pay fees due under the License Agreement and its continued use of the patented technology violates Deetz's "reasonable expectations of performance" and breaches the implied covenant of good faith and fair dealing that is inherent to all contracts.  Rust-Oleum asserts that Illinois law, which governs the Agreement, does not

---

[1] Deetz also asserts claims for infringement of U.S. Trademark Registration No. 3,970,111 "TINTABLE" (Count V); false designation of origin in violation of 15 U.S.C. §1125(a) (Count VI); and common law trademark infringement and unfair competition (Count VII).

recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, and this court agrees.  It is well settled that a breach of the implied covenant of good faith and fair dealing does not create an independent cause of action under Illinois law, rather, it is "is merely a basis for a breach of contract action".  *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008).  *See also, Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.,* 212 F.3d 373, 381 (7th Cir.2000); *Voyles v. Sandia Mortg. Corp.,* 196 Ill.2d 288, 289 (2001).  Accordingly, Rust-Oleum's motion to dismiss Count II is granted.

Deetz seeks leave to re-allege its breach of the implied covenant of good faith in its existing claim for breach of contract (Count I).  However, the proposed amendment submitted with its Opposition does not cure its pleading deficiency.

"The duty of good faith and fair dealing is implied in every contract and requires a party *vested with contractual discretion* to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of parties." *Seip v. Rogers Raw Materials Fund, L.P.*, 948 N.E.2d 628, 637 (2011) (emphasis added) (citation omitted).  "To establish a breach of the duty of good faith and fair dealing, the complaining party *must show that the contract vested the opposing party with discretion in performing an obligation under the contract* and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010) (emphasis added) (citing *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1443–45 (7th Cir. 1992); *Gore v. Indiana Ins. Co.,* 876 N.E.2d 156, 161–62 (Ill. App. Ct. 2007) ("Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion…." (citations omitted)).

Even with the proposed amendment, the Complaint fails to allege what, if any, terms of the License Agreement required Rust-Oleum to exercise its discretion, or how it abused that discretion. Rather, the proposed amendment makes the conclusory assertion that Rust-Oleum's actions violated Deetz's "reasonable expectation of performance." A mere failure to perform is simply a breach of contract, not a breach of the implied duty of good faith. Leave to amend Count I is granted. However, unless the amended Complaint includes facts that would allow the court to infer an actual lack of "good faith" in addition to any straightforward breach of an explicit contract term, that amendment will fail.

*Counts III and IV – Patent Infringement*

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

Assessing plausibility is a two-step process. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Id.* "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

conjecture, the complaint is open to dismissal." *Id.* (quoting *SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

Rust-Oleum seeks dismissal of the patent infringement claims on the grounds that, by failing to identify the accused products, which claims they are infringing, how the allegedly infringed claims read on the accused products, or the composition of the accused products, Deetz has not met the minimum pleading standard set forth in *Iqbal* and *Twombly*.[2]  Deetz asks this court to infer direct infringement from the fact that Rust-Oleum licensed the patents and then continued making magnetic primer products after the License Agreement was terminated.

With respect to Counts III and IV, Deetz needs to plead facts to support its allegation of direct infringement of the patents in question with sufficient specificity.  The court does not find such facts in the Complaint.  In order to bridge the gap between the potentially infringing activities and/or product and the patents, Deetz asks the court to draw inferences from the existence and content of a License Agreement pertaining to the period before the alleged direct infringement took place.  This simply muddles the argument rather than clarifying which actions or products made by Rust-Oleum infringed which claims of which patents.  The failure to provide a factual framework to sustain the bare allegations and conclusory assertions warrants dismissal at this stage.[3]  However, Deetz suggests it does have such facts, but has not managed to introduce them

---

[2] The December 2015 amendments to the Federal Rules of Civil Procedure abrogated Form 18 and Rule 84, and allegations of direct infringement are subject to the pleading standards outlined in *Iqbal* and *Twombly*.

[3] *See, e.g.*, *Disc Disease Sols., Inc. v. VGH Sols., Inc.*, 2016 WL 6561566, at *3 (M.D. Ga. Nov. 2, 2016) (dismissing complaint where "Plaintiff makes no effort to explain how Defendants' products infringe on any of Plaintiff's claims."); *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (noting, in dismissing the complaint, "in the post-Form 18 world, a plaintiff must include allegations sufficient to 'permit [the] court to infer that the accused product infringes each element of at least one claim.'" (quoting *Atlas IP, LLC v. Exelon Corp.*, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016)).

due to issues of confidentiality.[4]   The court therefore reluctantly grants Deetz leave to amend

Counts III and IV in order to allege facts connecting potentially infringing acts or products with

specific patent claims.   If Deetz chooses to pursue Counts III and IV, to the extent the necessary

facts it seeks to plead are trade secrets barred from disclosure by the parties' confidentiality

agreement, Deetz is ordered to file its amended complaint under seal and file a redacted version

electronically.

As a properly pled allegation of direct infringement is a threshold requirement for indirect

infringement, there is nothing to sustain Deetz's allegation of indirect infringement here.   *See In

re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir.

2012).   The motion to dismiss Counts III and IV is denied.   However, failure to submit an amended

complaint within 10 days will result in dismissal of Counts III and IV with prejudice.

## Conclusion

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 19) is ***granted***

with respect to Count II, and ***denied*** with respect to Counts III and IV.   Plaintiff must file its

amended complaint within 10 days or face dismissal of Counts III and IV with prejudice.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[4] The parties indicate in their pleadings that they are in the process of negotiating the terms of a protective order to preserve trade secret paint formulations.