UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEETZ FAMILY, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RUST-OLEUM CORPORATION, )<br>)<br>Defendant. )<br> ) | CIVIL ACTION<br><br>NO. 16-10790-TSH |

### ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISQUALIFY COUNSEL (Docket No. 104)

**October 29, 2018**

**HILLMAN, D.J.**

Rust-Oleum Corporation ("Defendant") moves, pursuant to the Massachusetts Rules of Professional Conduct 3.7 and Massachusetts Local Rule 83.6.1(a),[1] to disqualify Deetz Family, LLC's ("Plaintiff") attorney Eugene Winters on the grounds that he will likely be a necessary witness at trial. For the reasons that follow, Defendant's motion (Docket No. 104) is ***denied***.

### Background

Dayton J. Deetz, the sole inventor of U.S. Patent No. 5,609,788 ("Magnetic Paint Additive", issued March 11, 1997) and U.S. Patent No. 5,843,329 ("Magnetic Paint or Ink Additive", issued December 1, 1998), assigned his rights in both patents to Fibron, LLC on January 29, 2001. On April 20, 2005, Defendant and Fibron entered into a License Agreement (the "Agreement") that granted Defendant non-exclusive rights to the patents and related "Know-How"

---

[1] The Massachusetts Rules of Professional Conduct have been adopted by the District of Massachusetts per Local Rule 83.6.1(a) (incorporating by reference "the Massachusetts Rules of Professional Conduct adopted by the Massachusetts Supreme Judicial Court, as set forth as Rule 3:07 of that court.").

to manufacture, have made, and use and sell, magnetic paint products. The terms of the Agreement required Defendant to pay an up-front fee of $100,000 USD and royalties equaling 3% of net sales from April 20, 2005 until March 17, 2015 (the expiration date of the licensed patents), and 2% of net sales from March 18, 2015 until March 17, 2020. The Agreement also provided for payment of a minimum royalty of $20,000 in 2006, $30,000 in 2007, and $40,000 per year for the remaining years of the Agreement, in the event that actual royalties calculated from net sales fell below these thresholds.

On February 15, 2006, Fibron assigned and transferred all of its rights in the '788 and '329 patents, as well as its rights in the Agreement, to Plaintiff. Defendant made the $100,000 up front payment and paid at least part of actual royalties from 2006-2009, but from 2006-2010 did not pay the minimum royalties required under the license. Without notifying Plaintiff of any intent to terminate the Agreement, Defendant ceased making payments in 2010, and did not respond to Plaintiff's demand letters regarding royalty reports and overdue payments in August and September of 2013. On September 27, 2013, Plaintiff sent a letter notifying Defendant that the License Agreement would be terminated on October 27, 2013, and followed up with a letter on February 18, 2014 confirming termination of the Agreement.

Plaintiff alleges that Defendant continued to use Plaintiff's "Know-How" to make and sell the licensed products until March 17, 2015, after it stopped paying royalties and in breach of the Agreement.

**Legal Standard**

Pursuant to the attorney-advocate rule, a lawyer cannot serve as counsel at trial where it is likely he will be a necessary witness. Mass. R. Prof. Conduct 3.7. The party seeking disqualification has the burden of showing that the lawyer is likely to be a necessary witness. A lawyer is deemed necessary when "the proposed testimony is relevant, material, not merely

2

cumulative, and unobtainable elsewhere." *Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006) (citation omitted).

## Discussion

Here, Defendant argues that Mr. Winters negotiated the Agreement that forms the basis for the breach of contract action. According to Defendant, Mr. Winter's role in these negotiations renders him likely to be a necessary witness.

Defendant's argument fails for two reasons. First, Defendant has not made a sufficient showing that Mr. Winters was a participant in negotiations. Defendant simply relies on the conclusory allegation that "Mr. Winter negotiated the Agreement that forms the basis for this breach of contract action." Plaintiff points out, however, that none of the notes from the extensive negotiations mentions Mr. Winters as a participant. To the contrary, they suggest that Joe Deetz negotiated directly with Defendant.

Second, even if Mr. Winters participated in the contract negotiations, Defendant has failed to demonstrate that Mr. Winters would be a necessary witness under Rule 3.7. Joe Deetz and Neal Barry are available witnesses that participated in the contract negotiations. Defendant has not argued that their testimony will be inadequate or that Mr. Winters has unique knowledge rendering his testimony indispensable. Thus, while Mr. Winter's testimony would be relevant and material, it is likely to be cumulative and obtainable from Mr. Deetz and Mr. Barry.

## Conclusion

For the reasons stated above, I find that Defendant has not satisfied its burden of demonstrating that Eugene Winters is a necessary witness within the meaning of Mass. R. Prof. Conduct 3.7. Thus, Defendant's motion (Docket No. 104) is ***denied***.

**SO ORDERED**

3

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**